UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) NO. 4:22 CR 298 SRC |
| v. | ) |
| ANTHONY "TONY" WEAVER, SR., | ) |
| Defendant. | ) |

# GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through The United States Attorney's Office for the Eastern District of Missouri and Hal Goldsmith, Assistant United States Attorney for the Eastern District of Missouri, and for its Sentencing Memorandum, states to this Honorable Court as follows:

1. From January, 2017 through June, 2022, this Defendant served in a position of public trust as a high-ranking employee of St. Louis County, Missouri. First as the Executive Assistant to then Councilwoman Rochelle Walton-Gray, and then as the appointed Change Management Coordinator at the St. Louis County Justice Center. His tax-payer funded salary at the time of his termination was $95,000 per year. Through his admitted criminal scheme, Defendant abused his position of public trust solely out of greed and for his own personal gain. As he stated on May 7, 2020, in discussing the scheme with the business owner identified as "John Smith,"[1]

---

[1] Defendant, through counsel, has stipulated to the use of quotations from the United States' undercover recordings.

1

>   SMITH: "When the money comes in…we split it….You tell me how we're gonna' split it. OK?"
>
>   WEAVER: "There's so much damn money around St. Louis County, it's crazy."
>
>   SMITH: "We need to get some of that…."
>
>   WEAVER: "Uh huh. Everything they've got over there we need to get some of…that's my attitude."

Through his fraudulent scheme, committed while serving as a high-ranking and well-paid County employee, Defendant sought to obtain a split of grant proceeds through a St. Louis County program aimed at providing CARES Act grants to small businesses which had suffered as a result of the Covid-19 pandemic. Thus, through his criminal conduct, he abused the public trust of the citizens of St. Louis County. Application of the United States Sentencing Guidelines here advises a sentence of 12 to 18 months' imprisonment. This Court's sentence should be fair and just under the facts and circumstances presented, and acknowledge the extent of Defendant's criminal conduct and the harm his conduct caused to the public who mistakenly placed their trust in him. It is the position of the United States that a term of imprisonment is required in this case.

    2.    Title 18, United States Code, Section 3553(a) sets out the factors this Court should consider in fashioning an appropriate sentence. The first such factor to be considered is the nature and circumstances of the offense, and the history and characteristics of the Defendant, 18 U.S.C. 3553(a)(1). As to the nature and circumstances of the offense, it doesn't get much worse than attempting to obtain CARES Act grant funds through a fraudulent scheme such as that perpetrated by Defendant here. Had the Defendant's scheme been successful, it would have diverted much needed grant funds from legitimate business applicants which actually had to close their doors and lay off employees during the pandemic. The fact that Defendant's scheme failed should be of no consequence to this Court in fashioning an appropriate sentence, as such a "no harm, no foul"

2

result would not achieve Congress' goals in establishing the sentencing factors to consider here.

3. Defendant's scheme was bold and reflected a level of arrogance which cannot be ignored. It is significant that Defendant was the one who initially suggested the scheme to the business owner who then reported it to federal law enforcement. Defendant provided the business owner with all of the information concerning the grant program, and actually prepared the false applications which were submitted to the County. Defendant saw the grant funds as an opportunity, and recruited the business owner with the understanding that any proceeds ultimately received would be split. Defendant boasted of his position in St. Louis County government, and the relationships and contacts he had with County officials and employees in his approach and subsequent discussions with the business owner:

May 6, 2020:

**WEAVER**: "Trust me. I got it. They're going to do what I tell them to do."

May 10, 2020:

**WEAVER**: "I'm too powerful, brother."

June 1, 2020:

**WEAVER**: "All we have to do is apply for them because my people are inside, work their magic and do what they need to do."

**WEAVER**: "I'm the quiet guy, I just put the people in the right place, pick up the phone and say this what you need to do….Then we get ready to rock 'n roll."

**WEAVER**: "If anything come up, you all need anything from me, you all call me and I work behind the scenes and make it happen, get it done. Because I work inside St. Louis County…, that's one of the things we've been trying so hard in my political organization, you have to have somebody on the inside, you have to have someone on the outside, and you have the business people. Everybody's coming together doing their thing. And then when Sam Page's term is over, we'll all be millionaires and won't have to worry about anything at all…."

June 19, 2020:

SMITH: "Have you talked to Rochelle?"

WEAVER: "I talked to her yesterday, absolutely. We talk every day or every other day, man."

SMITH: "I hope they don't forget about me when they win [reelection]."

WEAVER: "When Sam [Page] wins again, then we're really going to start doing some stuff."

The United States has no evidence that County Executive Page was aware of Defendant's schemes, and only uses these statements to illustrate Defendant's misuse of his position and his relationships in his efforts at soliciting the business owner to participate in his scheme. For without the business owner's participation in the scheme, there would be no potential grant proceeds to split. Defendant needed the business owner, and through Defendant's statements he attempted to convince the business owner that the scheme would be successful and remain undetected.

4.      It is also significant here that Defendant knew his conduct in perpetrating the fraud scheme was unlawful, yet he continued to manage and direct the scheme and took active steps to conceal it.

May 14, 2020:

WEAVER: "I don't want to do it from my phone."

SMITH: "Why?"

WEAVER: "Because I work for St. Louis County."

SMITH: "That's a County phone?"

WEAVER: "No. It's my personal phone."

SMITH: "They look into it?"

WEAVER: "I don't know what they could do. I don't trust St. Louis County."

SMITH: "Really?"

**WEAVER**: "Yes. They're trying to get me on something, brother. I'm too powerful, brother…."

**WEAVER**: "I don't want to do it from my phone because St. Louis County may be able to see its coming from Tony Weaver's phone…."

May 21, 2020:

**WEAVER**: "You know you can't give me no check."

**WEAVER**: "I don't want you to do that [make a campaign donation] because then that sheds the light on you giving to Rochelle [Walton-Gray] or Tony….Because we've got to turn it into the government."

**WEAVER**: "I hope this place is not bugged…that's how [former St. Louis County Executive] Stenger got caught."

Defendant's statements and efforts at concealing his scheme give this Court a clear view into Defendant's character and mindset here. That view reflects that Defendant's conduct, as a high-level County employee, was reprehensible, in addition to being unlawful.

5. This is *not* a victimless crime. Our government officials should be held accountable for their criminal conduct; the citizens deserve it, and fairness and justice require it. Defendant was a public official, and the public should have been able to count on him and trust him to provide them with his honest services. Instead this Defendant broke that trust here and should be justly punished.

6. This Court's sentence should also afford adequate deterrence to criminal conduct, 18 U.S.C. 3553(a)(2)(B). This Defendant was an appointed official in St. Louis County. He used his inside information, as well as contacts and relationships with other County officials and employees to attempt his scheme to defraud. This Court should fashion an appropriate punishment not only to deter this Defendant from future criminal conduct, but in order to deter other individuals

5

in similar governmental positions from committing similar crimes. In the instant case, the United States submits that a prison sentence within the applicable sentencing guideline ranges will have the required deterrent effect.

7. It is the United States' position that justice and fairness require a sentence of imprisonment in this case. As previously stated, this is *not* a victimless crime. Our public officials should be held accountable for their criminal conduct by appropriate prison sentences; the victim citizens deserve it, and fairness and justice require it.

WHEREFORE, the United States of America prays that this Honorable Court sentence Defendant to an appropriate sentence, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

SAYLER B. FLEMING
United States Attorney


 */s/Hal Goldsmith*
HAL GOLDSMITH #32984
Assistant United States Attorney
111 South 10th Street, Room 20.331
St. Louis, Missouri  63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the defendant's counsel of record.

 */s/ Hal Goldsmith*
HAL GOLDSMITH
Assistant United States Attorney

6